UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TRUE BUSINESS FUNDING LLC,

Plaintiff,

-against-

SONATA CONSTRUCTION LLC DBA ARCHITECTURAL CONSTRUCTION GROUP, ACG AND ACG ROOFING, LLC, PAN GULF PROPERTIES, INC, JA A, INC, ATALA DESIGN, INC, JOHNSON ATALA & ASSOCIATES INC, AND GEORGE PAUL ATALA,

Defendants.

**MEMORANDUM AND ORDER**
Case No. 25-CV-680 (FB) (JAM)

*Appearances:*

*For the Plaintiff:*
STEVEN WILLIAM WELLS
WILLIAM PARSONS
Wells Law P.C.
229 Warner Rd
Lancaster, NY 14086

YEHUDA KLEIN
The Klein Law Firm LLC
PO Box 714
Lakewood, NJ 08701

CHRISTOPHER JAMES BAUM
12 Curtis Place
Lynbrook, NY 11563

*For the Defendants*
HILLEL IRA PARNESS
Parness Law Firm, PLLC
136 Madison Avenue, 6th Floor
New York, NY 10016

**BLOCK, Senior District Judge:**

Plaintiff True Business Funding LLC brought suit against Sonata Construction, ACG and ACG Roofing, Pan Gulf Properties, JA A Inc., Atala Design, Inc., and Johnson Atala &

1

Associates (the "Company Defendants") for breach of contract, and against George Paul Atala (the "Guarantor") for breach of guaranty. The present dispute stems from two Agreements for the Sale of Future Receivables the parties signed in 2024, according to which Plaintiff purchased rights to the Company Defendants' future receivables, and Guarantor agreed to guarantee any amount owed to Plaintiff in the event of Company Defendants' default. *See* Answer ¶¶ 5, 12, ECF No. 6.

In exchange for the upfront purchase price, the Company Defendants were required to remit weekly payments to the Plaintiff as an approximated percentage of their weekly accounts receivable. First Agreement of Sale of Future Receipts, ECF No. 25-2; Second Agreement, ECF No. 25-3.[1] After making the weekly payments for a few months, Defendants blocked Plaintiff's access to the account in which the deposits were made. Answer at ¶10. When Defendants defaulted, Plaintiff brought this action in state court, and following removal, Defendants answered the complaint and raised a number of counterclaims against Plaintiff. The counterclaims include: (1) tortious interference with business relations, (2) fraudulent inducement, (3) a RICO violation, (4) unjust enrichment, (5) deceptive trade practices, and (6) seeking declaratory judgement that the agreements are void *ab initio*.

Currently before the Court is Plaintiff's motion to dismiss the counterclaims.[2] For the reasons that follow, the motion is GRANTED.

---

[1] As the terms and conditions of the Agreements are virtually identical, the Court will simply refer to the Agreements as "Agree."
[2] In the context of the motion to dismiss the counterclaims, although the Corporate Defendants are now counterclaimants and True Business Funding is now a counter-defendant, in the hope of avoiding confusion, the Court will refer to the counterclaimants as Defendants, and to the counter-defendant as Plaintiff.

Legal Standard

A motion to dismiss a counterclaim under Rule 12(b)(6) is subject to the same standard as a motion to dismiss a complaint, with the counterclaim's factual allegations accepted as true. *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019). "To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The pleading must offer more than "bare assertions," "conclusory" allegations, and a "formulaic recitation of the elements of a cause of action." *Id.* Courts should "draw all reasonable inferences in a Plaintiff's [here, counter-defendant's] favor, assume all 'well-pleaded factual allegations' to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

Defendants' Counterclaims

(1)   Tortious Interference with Business Relations

"The required elements of a cause of action for tortious interference with prospective business relations are . . . (a) business relations with a third party; (b) the defendant's interference with those business relations; (c) the defendant acting with the sole purpose of harming the plaintiff or using wrongful means; and (d) injury to the business relationship." *Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F. Supp. 2d 455, 471–72 (E.D.N.Y. 2008).

Defendants claim that Plaintiff interfered with their business relations by sending UCC lien notices to their current and former clients. Answer ¶ 42. However, the Agreements expressly provided Plaintiff with the right to enforce its rights as a secured creditor in the event of Defendants' default. Agree. ¶ 29(a). Accordingly, Defendants have failed to plead the "wrongful means" necessary for the counterclaim to survive. Furthermore, Plaintiff's "purpose" in sending the lien notices was reasonable from a business perspective and therefore cannot satisfy the element of acting with the "sole purpose of harming" the Defendants. *L. Offs. of Ira H. Leibowitz v. Landmark Ventures, Inc.*, 131 A.D.3d 583, 585 (2d Dept. 2015). ("[W]here the offending party's actions are motivated by economic self-interest, they cannot be characterized as solely malicious."). Thus, counterclaim I is dismissed.

(2)     Fraudulent Inducement

To state a claim for fraud under New York law, "a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists, P.C.*, 2025 WL 1166982, at *15 (E.D.N.Y. Mar. 26, 2025). Allegations of fraud must be plead with particularity. Fed. R. Civ. P. 9(b).

As the basis for their fraud counterclaim, Defendants allege that Plaintiff falsely represented to them that the Agreements were "lawful purchases of future receivables rather than high-interest loans structured to circumvent usury laws." Answer ¶ 45. Defendants' fraud allegations thus hinge on their legal conclusion that the Agreements are usurious loans. While the Court must draw all reasonable factual inferences in Defendants' favor, it need not "credit . . . legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir.

4

2013). Accordingly, as an initial matter, the Court will consider whether or not the Agreements are usurious loans.

In New York State, it is unlawful usury to charge interest on a loan at a rate exceeding 25% per annum. N.Y. Penal Law § 190.40. But if a transaction is not a loan, then there can be no usury, "however unconscionable the contract may be." *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 A.D.3d 664, 665 (2d Dept. 2020) (*quoting Orvis v. Curtiss*, 157 N.Y. 657, 661 (1899)). To determine whether a transaction constitutes a usurious loan, "[t]he court must examine whether the plaintiff is absolutely entitled to repayment under all circumstances. Unless a principal sum advanced is repayable absolutely, the transaction is not a loan. Usually, courts weigh three factors when determining whether repayment is absolute or contingent: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy." *Id.* at 666.[3] The Court considers these three factors in turn.

Reconciliation Provision

A reconciliation provision allows the agreement's Merchant (here, Defendants) to seek an adjustment of the amount paid to the Purchaser (here, Plaintiff) each week based on revenues (or lack thereof). *Id*. Where there is a reconciliation provision there is less likely to be a loan because changing the amount paid each week shifts risk to the Purchaser and extends the repayment period, reducing the Purchaser's rate of return. Both Agreements provide for the Merchant's right to request reconciliation at its "sole and absolute discretion," and permit the Merchant to request

---

[3] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

reconciliation "as many times . . . as it deems proper." Agree. ¶¶ 10, 11(d). As such, this factor weighs against finding that the Agreements are loans.

Indefinite Term

"If the term is indefinite, then it is consistent with the contingent nature of each and every collection of future sales proceeds under the contract." *Fleetwood Servs., LLC v. Ram Capital Funding, LLC*, No. 20-cv-5120 (LJL), 2022 U.S. Dist. LEXIS 100837, at *28 (S.D.N.Y. June 6, 2022). Again, an indefinite term shifts risk to the Purchaser and weighs against the agreement being a loan. Neither Agreement contains a definite term for repayment, rather defining an "estimated term" which was expressly understood to be flexible given the reconciliation process' potential for changing the rate of payment. *See* Agree., Key Terms and Definitions.

Recourse in Event of Bankruptcy

Where an agreement states that in the event of Merchant bankruptcy there is no default, the agreement is less likely to be a loan. *See Lateral Recovery, LLC v. Capital Merch. Servs., LLC,* 632 F. Supp. 3d 402, 459-60 (S.D.N.Y. 2022). Here, both Agreements expressly excuse the Merchant from performance in the event of bankruptcy. Agree. ¶ 15. The Agreements also specifically acknowledge the Plaintiff's acceptance of the risk that it might not recover the full amount of receipts if "Merchant's business went bankrupt or otherwise ceased operations in the ordinary course of business . . . ." *Id*. at ¶ 14(e). Therefore, this factor as well indicates that the Agreements are not loans.

Having considered each factor, the Court finds as a matter of law that the Agreements are not loans and therefore not usurious. Lacking anything to fraudulently misrepresent Counterclaim II fails on its face and is dismissed.

(3) RICO Violation

A valid RICO claim must show: "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001). To establish a violation of 18 U.S.C. § 1962(c), a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* at 306.

Defendants claim that Plaintiff "engaged in a pattern of racketeering activity, including wire fraud . . . and mail fraud . . . to enforce illegal agreements." Answer, ¶ 48. This claim fails because they have failed to plead the predicate acts of mail and wire fraud with the particularity required by Fed. R. Civ. P. 9(b). Claims of wire and mail fraud may survive a motion to dismiss when they state "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Conan Props. v. Mattel, Inc.*, 619 F. Supp. 1167, 1172 (S.D.N.Y. 1985). In other words, such claims must be plead *with particularity*. Defendants provide no such particularity. Besides conclusory statements, Defendants offer no detail of what fraudulent misrepresentations were made, when such statements were made and by whom, or how they were misled by such statements.

Furthermore, "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001). A corporate entity can be sued as a

7

RICO "person" or named as a RICO "enterprise," *see* 18 U.S.C. § 1961(3), (4), but the same entity cannot be both the RICO person and the enterprise. *Anatian v. Coutts Bank (Switzerland) Ltd.,* 193 F.3d 85, 89 (2d Cir. 1999). Defendants do not plead the existence of two separate entities for the purpose of their RICO claim, rather, they simply offer the conclusory statement that "[Plaintiff's] fraudulent conduct meets the criteria for a racketeering enterprise under RICO." Answer ¶ 49.

Lacking the particularity required to plead fraud and failing to allege a RICO person and a discrete enterprise, Defendants' counterclaim III fails and is dismissed.

(4)　Unjust Enrichment

To establish liability for unjust enrichment, a plaintiff must prove that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 306 (2d Cir. 2004). New York law is clear, however, that "a party may not recover in . . . unjust enrichment where the parties have entered into a contract that governs the subject matter." *Cox v. NAP Constr. Co., Inc.*, 10 N.Y.3d 592, 607 (2008). Here, the alleged "enriching" occurred as a result of payments made by Defendants to Plaintiff pursuant to a contract signed by the parties. Accordingly, counterclaim IV is dismissed.

(5)　Deceptive Trade Practices

To state a claim under N.Y. Gen. Bus. Law § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Plavin v. Grp. Health Inc.*, 35 N.Y.3d 1, 10 (2020). Conduct is consumer-oriented when it has "a broad impact on consumers at large." *Singh v. City of N.Y*, 40 N.Y.3d 138, 148 (2023). A "single shot

transaction" tailored to a specific consumer is insufficient to show a "broad impact on consumers." *Womack v. Capital Stack, LLC*, No. 1:18-cv-04192 (ALC), 2019 U.S. Dist. LEXIS 148644, at *28 (S.D.N.Y. Aug. 30, 2019). Furthermore, courts have observed that this statute is aimed at modest consumer transactions rather than complex or unique arrangements with parties receiving expert representation and advice, as in the present case. *See Singh*, 40 N.Y.3d at 148. Private contract disputes between experienced and sophisticated parties therefore fall squarely outside the considerations of the statute. *See Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). Under *Singh*, the Agreements do not appear consumer-facing and do not seem like the kind of conduct that N.Y. Gen. Bus. Law § 349 was drafted to address.

Even if the conduct at issue here was consumer-oriented, the pleadings fail to allege materially misleading conduct sufficient to support the second prong. The New York Court of Appeals has defined the term "materially misleading" conduct using an objective standard under which "the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 782 (S.D.N.Y. 2018). But if the allegedly deceptive act was "fully disclosed" there can be no § 349 claim. *Womack*, 2019 U.S. Dist. LEXIS 148644, at *29. Here, the Defendants were not misled because the Agreements "fully disclosed" all material terms. *See* Agree. ¶ 57 *Entire Agreement* ("This Agreement . . . embod[ies] the entire agreement between Merchant, Guarantor and Purchaser and supersede all prior agreements and understandings relating to the subject matter hereof."). Because the Defendants' pleadings do not contain any indications of "materially misleading" conduct outside of the disputed contracts—which the Court has already found to be lawful—counterclaim V fails and is dismissed.

9

(6) Declaratory Judgement (Void Agreements)

Defendants seek a declaratory judgement that the Agreements are "void *ab initio*" based on their allegedly being usurious loans. As the Court has already determined that they are not usurious loans, no such a declaratory judgment will issue and counterclaim VI is dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss Defendants' counterclaims is GRANTED.

**SO ORDERED.**

                                                           /S/ Frederic Block

                                                 FREDERIC BLOCK
                                                 Senior United States District Judge

Brooklyn, New York
October 17, 2025